FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 30, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATHANIEL MANNY BALLANTYNE,<br><br>                Plaintiff,<br><br>   v.<br><br>GUENTHER MANAGEMENT LLC DBA GUENTER PROPERTY MANAGEMENT, VICTOR M, HUBERTUS GUENTHER, MISCHA GUENTER, ERICH GUENTER, SERGEY KHOLOSTOV,<br><br>                Defendants. | NO. 2:24-CV-0085-TOR<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 22). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendants' Motion for Summary Judgment (ECF No. 22) is GRANTED.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

1

**BACKGROUND**

2      This matter arises out of alleged discriminatory rental practices.  Around

3  December 18, 2023, Plaintiff arranged a showing of a property he was interested in

4  renting at 1606 E. 65th Avenue in Spokane, Washington.  ECF No. 24 at 2, ¶ 9;

5  ECF No. 29 at 2, ¶ 6.  Plaintiff toured the property and submitted an application to

6  rent the property on December 19, 2023.  ECF No. 24 at 2, ¶¶ 9, 11; ECF No. 29 at

7  2, ¶ 7.  Violet Obonyo was Plaintiff's co-applicant.  ECF No. 23 at 3.  After some

8  period of time, Plaintiff reached out to Defendant Guenther Property Management,

9  enquiring whether the renting requirements had changed for the property he had

10  submitted an application for, specifically whether the credit score requirement had

11  increased from 600 to 700.  ECF No. 24 at 3, ¶ 12; ECF No. 29 at 2–3, ¶ 14.  The

12  email expressed Plaintiff's belief that the posting for the rental property had been

13  changed after he had submitted his application to create a basis for denying him the

14  rental because he is black.  ECF No. 3 at 3–4, ¶ 7.  A representative from

15  Defendant Guenther Property Management responded, informing Plaintiff that the

16  credit score requirement for the at issue property was always 700, and that another

17  prospective renter had submitted an application earlier than Plaintiff, and thus had

18  been approved based on a "first come first serve," policy.  ECF No. 24 at 3, ¶ 12;

19  ECF No. 29 at 2–3, ¶ 14.

20      The parties disagree as to the timing of the criteria in the posting and

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 2

1  whether another prospective tenant submitted an application before Plaintiff.

2  Plaintiff contends that Defendant Guenther Property Management's requirement

3  for credit score in the emailed policy and in the listing for the rental property was

4  always 600 and was only made to be 700 after he applied.  ECF No. 29 at 2–3, ¶¶

5  9, 15, 19.  He also disputes that another prospective renter submitted an application

6  before he did, and argues that he was never made aware of a "first come first

7  serve," policy.  *Id.*, ¶¶ 13, 14, 16, 18.  Defendants argue that Plaintiff was made

8  aware of the pending background check and credit score requirement, which was

9  700 for this particular property, at the time of application.  ECF No. 24 at 2, ¶ 10;

10 ECF No. 36 at 3, ¶ 6.  Moreover, Defendants argue that a renter who submitted an

11 application on December 17, 2023, two days before Plaintiff, was ultimately

12 approved as essentially the first in line for the rental.  ECF No. 24 at 3, ¶ 12; ECF

13 No. 36 at 2–4, ¶¶ 1, 3, 5.  Defendants also assert, and Plaintiff refutes, that the

14 individual who was approved to rent the property was black.  ECF No. 29 at 3, ¶

15 17; ECF No. 36 at 2, ¶ 4.  The parties disagree as to whether Plaintiff was actually

16 denied as a renter for the property.  ECF No. 29 at 2–3, ¶ 15; ECF No. 36 at 2, ¶ 2.

17      Plaintiff filed this lawsuit on March 18, 2024, bringing claims of violations

18 of 42 U.S.C. § 3604, the Fair Housing Act, violations of various provisions of

19 RCW 49.60, the Washington Law Against Discrimination, Intentional Infliction of

20 Emotional Distress, Negligent Infliction of Emotional Distress, Negligent

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 3

Retention, and Negligent Supervision. *See generally* ECF No. 1. Defendants filed

a Motion for Summary Judgment, arguing that Plaintiff's application was not

denied on the basis of race, and in fact, was never denied at all. ECF No. 23 at 5.

Plaintiff opposes, arguing that questions of fact still remain because Defendants

have not provided adequate proof that someone submitted an application before he

did, and they did not change that credit requirement for the property after he

submitted an application.[1] ECF No. 33 at 1.

## DISCUSSION

### I.    Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who

demonstrates "that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling

on a motion for summary judgment, the court must only consider admissible

evidence. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

The party moving for summary judgment bears the initial burden of showing the

---

[1] The Response to the Motion for Summary Judgment was filed before the Court

denied Plaintiff's request for sanctions related to discovery. ECF No. 34. To the

extent that Plaintiff makes arguments as to prejudice he has faced in discovery

here, the Court relies on its prior Order.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 4

1  absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

2  317, 323 (1986).  The burden then shifts to the non-moving party to identify

3  specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

4  *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

5  of evidence in support of the plaintiff's position will be insufficient; there must be

6  evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

7       For purposes of summary judgment, a fact is "material" if it might affect the

8  outcome of the suit under the governing law.  *Id*. at 248.  Further, a dispute is

9  "genuine" only where the evidence is such that a reasonable jury could find in

10  favor of the non-moving party.  *Id*.  The Court views the facts, and all rational

11  inferences therefrom, in the light most favorable to the non-moving party.  *Scott v.*

12  *Harris*, 550 U.S. 372, 378 (2007).  Summary judgment will thus be granted

13  "against a party who fails to make a showing sufficient to establish the existence of

14  an element essential to that party's case, and on which that party will bear the

15  burden of proof at trial."  *Celotex*, 477 U.S. at 322.

16  **II.    The Fair Housing Act**

17       Plaintiff brings claims relating to disparate impact and intentional

18  discrimination under 42 U.S.C. § 3604(a)–(b) in refusing to rent him the property.

19  ECF No. 1 at 23–26.  The Fair Housing Act makes it unlawful to refuse to "rent

20  after the making of a bona fide offer, or to refuse to negotiate . . . the rental of, or

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 5

1  otherwise make unavailable or deny, a dwelling to any person because of race,

2  color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(a).  And

3  prohibits discrimination "against any person in the terms, conditions, or privileges

4  of sale or rental of a dwelling, or in the provision of services or facilities in

5  connection therewith, because of race, color, religion, sex, familial status, or

6  national origin."  42 U.S.C. § 3604(b).  Fair Housing Act claims may be brought

7  under theories of both disparate treatment and disparate impact, or both.  *Comm.*

8  *Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 711 (9th Cir.

9  2009).

10        *A. Disparate Treatment*

11        The Ninth Circuit analyzes disparate treatment claims under Title VII's

12  three-stage *McDonnell Douglas/Burdine* test.  *Gamble v. City of Escondido*, 104

13  F.3d 300, 305 (9th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S.

14  792, 802 (1973)) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248

15  (1981).  The plaintiff must first establish the prima facia elements of a disparate

16  treatment claim, here including: (1) the plaintiff is a member of a protected class;

17  (2) the plaintiff applied for and was qualified to rent a property; (3) the defendant

18  denied the rental property to the plaintiff; and (4) a similarly situated party was

19  treated differently.  *See Gamble*, 104 F.3d at 305; *Soules v. U.S. Dep't of Hous. &*

20  *Urban Dev.*, 967 F.2d 817, 822 (2d Cir. 1992); *see also Harris v. Itzhaki*, 183 F.3d

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 6

1  1043, 1051 (9th Cir. 1999) ("Adapted to this situation, the prima facie case

2  elements are: (1) plaintiff's rights are protected under the FHA; and (2) as a result

3  of the defendant's discriminatory conduct, plaintiff has suffered a distinct and

4  palpable injury.").  If the plaintiff proves his or her prima facia case, under the

5  burden shifting framework, the defendant must articulate a legitimate,

6  nondiscriminatory reason for its action.  *Budnick v. Town of Carefree*, 518 F.3d

7  1109, 1114 (9th Cir. 2008).  The burden then shifts back to the plaintiff to establish

8  by a preponderance of the evidence that the defendant's asserted reason is pretext

9  for discrimination.  *Id*.

10      Neither party contests that Plaintiff, as a black man, satisfies the first

11  element of the prima facia test.  ECF No. 1 at 3, ¶ 11.  However, Plaintiff is unable

12  to establish or rebut Defendants' evidence with regard to the second, third, and

13  fourth elements.  He argues that at the time of application for the rental property,

14  the credit score requirement on the listing was 600, and both he and his co-

15  applicant had credit scores that qualified them for the property.  ECF No. 1 at 16, ¶

16  68; ECF No. 29 at 3, ¶ 19.  Defendants raised the minimum credit score

17  requirement from 600 to 700 on the property after he applied, he argues, and this

18  practice is disparate treatment under the Fair Housing Act.  ECF No. 33 at 7.

19  Plaintiff leaves unrebutted Defendants' produced online management log that

20  depicts, at the time of posting the property for rent online on December 8, 2023, a

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 7

listing with a stated credit score requirement of 700.  ECF No. 24-2 at 8.  At the time of application, Plaintiff states that he had a credit score of 620 and his co-applicant had a credit score of 698, making them both unqualified for the rental listing and therefore unable to satisfy the second element of the test.  ECF No. 33 at 3.

More importantly, pursuant to Defendants' email, Plaintiff was not denied based on the credit score requirement, but instead the property was not available because someone else had submitted an application before him and had been approved first.  ECF No. 33-2 at 3.  Defendants provided a timestamped log of the application submission on December 17, 2023, and Plaintiff's application on December 19, 2023.  ECF No. 24-2 at 6.  Plaintiff's Response ignores this production.  ECF No. 29 at 2, ¶ 13.  Thus, even if Plaintiff had the requisite credit score, he was not the most qualified applicant as he was not "first in line" for the property and cannot satisfy the third element.  Finally, Defendants also argue that the person who submitted the application on December 17 was black, and proffer Plaintiff's own testimony as support.  *See* ECF No. 36 at 2, ¶ 4; ECF No. 24-3 at 10.  Plaintiff does not rebut the contention directly.  *See* ECF No. 29 at 3, ¶ 17. Plaintiff has failed to prove his prima facia case or rebut the evidence that Defendants did not engage in discriminatory conduct, and therefore summary judgment is proper.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

1     *B. Disparate Impact*

2         Plaintiff's theory of disparate impact centers on the historically lower credit

3     scores of black and Hispanic rental applicants, and therefore argues that

4     Defendants' credit score requirement has a disparate impact.  ECF No. 1 at 24–25.

5     He also seemingly argues that Defendants have manufactured their "first come first

6     serve," policy to the detriment of protected class members applying, though the

7     theory is not mentioned in his Complaint.  See ECF No. 30 at 3.  Both claims fail.

8         Disparate impact claims are subjected to the same burden shifting

9     framework as is discussed for disparate treatment.  *Ojo v. Farmers Grp., Inc.*, 600

10    F.3d 1201, 1203 (9th Cir. 2010).  The prima facia elements require the plaintiff to

11    demonstrate: "(1) the occurrence of certain outwardly neutral . . . practices, and (2)

12    a significantly adverse or disproportionate impact on persons of a particular [type]

13    produced by the [defendant's] facially neutral acts or practices."  *Gamble*, 104 F.3d

14    at 306 (citing *Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 745 (9th

15    Cir. 1996)).  There is a "robust causality," requirement between an identified

16    neutral policy and any alleged disparities that affect members of a protected class,

17    which requires a plaintiff to produce more than just statistical evidence of a causal

18    connection to show that it was the challenged policy, and not some other factor or

19    policy, that caused a disproportionate effect.  *Sw. Fair Hous. Council, Inc. v.*

20    *Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 961 (9th Cir. 2021).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 9

1 In order to establish a disparate impact case, a plaintiff must show, "at least that the

2 defendant's actions had a discriminatory effect." *Keith v. Volpe*, 858 F.2d 467,

3 482 (9th Cir. 1988) (internal citation omitted). The burden the shifts to the

4 defendant to either rebut the factual underpinnings of the claim or demonstrate

5 nondiscriminatory reasons for the practice causing the disparate impact. *Id*. If a

6 defendant successfully carries the burden, it then shifts back to Plaintiff to show

7 that equally effective alternatives with less discriminatory impacts exists that still

8 accomplish the defendant's legitimate goals. *Inclusive Communities*, 576 U.S. at

9 533.

10    Moreover, statutory standing claims under the Fair Housing Act are

11 coextensive with Article III standing. *Havens Realty Corp. v. Coleman*, 455 U.S.

12 363, 372 (1982). Article III of the United States Constitution vests in federal

13 courts the power to entertain disputes over "cases" or "controversies." U.S.

14 CONST. art. III, § 2. To satisfy the case or controversy requirement, and thereby

15 show standing, a plaintiff must demonstrate that throughout the litigation, they

16 suffered, or will be threatened with, an actual injury traceable to the defendant

17 which will likely be redressed by a favorable judicial decision. *Spencer v. Kemna*,

18 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477

19 (1990)); *see also Deakins v. Monaghan*, 484 U.S. 193, 199 (1988) ("Article III of

20 the Constitution limits federal courts to the adjudication of actual, ongoing cases or

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 10

1  controversies between litigants."). Three elements must be shown in order to

2  establish Article III standing: (1) the plaintiff must have suffered an "injury in fact"

3  which is both concrete and particularized and not "conjectural" or "hypothetical";

4  (2) there must be a causal connection between the injury and the conduct

5  complained of; and (3) it must be "likely" as opposed to "speculative" that the

6  injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504

7  U.S. 555, 560–61 (1992) (internal citations and quotations omitted). Regarding the

8  Fair Housing Act disparate impact claims specifically, a plaintiff is not required to

9  be among the class discriminated against in order to have standing. *El Dorado*

10 *Estates v. City of Fillmore*, 765 F.3d 1118, 1121 (9th Cir. 2014) (quoting *Havens*

11 *Realty Corp.*, 455 U.S. at 378–79).

12      The Court infers that Plaintiff is arguing that the 600 or 700 minimum credit

13 score requirement is an outwardly neutral policy, as it applies to every applicant

14 who seeks to rent from Defendants. ECF No. 29 at 2, ¶ 9. In his Complaint and in

15 Response to the present motion, Plaintiff offers statistics relating to the credit score

16 and real-estate disparities between black and Hispanic individuals and white

17 individuals. ECF No. 1 at 11, ¶ 41. He presents a report from 2021 detailing that

18 black consumers have a median credit score of 612 and Hispanic consumers have a

19 median credit score of 661, while white consumers have a median credit score of

20 725. ECF No. 1 at 6, ¶ 25. Also contained in the report, Black and Hispanic

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 11

1  consumers have a disproportionately larger percentage of subprime credit scores.

2  *Id.*, ¶ 26.  He also offers statistics on the Moran Prairie neighborhood where the

3  rental property at issue is located, including that it is demographically composed of

4  85.1% white individuals, 2.9% Asian individuals, and 1.6% black individuals, and

5  notes that much of the real estate is owner-occupied and on average is more

6  expensive than neighborhoods around the United States.  ECF No. 30 at 1–2, ¶ 4.

7        What Plaintiff does not include is a causal connection between Defendants'

8  actions and the statistical information.  Notwithstanding the fact that Plaintiff was

9  not denied the rental property on account of his own credit score, he does not offer

10  an argument that Defendants' policy disproportionally effects black and Hispanic

11  individuals.  Plaintiff does not provide any information relating to how many of

12  Defendants' properties require a credit score greater than 700, how many times a

13  black or Hispanic individual applied for the same unit and were turned down in

14  favor of a white applicant, or whether Defendants manage similar properties in the

15  neighborhood.  Instead, Plaintiff relies on conclusory statements that he does not

16  support with evidence, and states generally that credit scores are not the best

17  measurement of rental security.  *Gamble*, 104 F.3d at 306 (citation omitted)

18  ("Under the disparate impact theory, a plaintiff must prove actual discriminatory

19  effect, and cannot rely on inference.").  Underscoring the point, parties have both

20  presented evidence that Defendants have a baseline credit requirement of 600,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 12

1  which would encompass not just Plaintiff, but the median credit score of black and

2  Hispanic individuals per the research that Plaintiff has offered.  *See* ECF No. 24-5

3  at 2; ECF No. 33-1 at 3; ECF No. 33-3 at 3; ECF No. 33-4 at 2.  And ultimately,

4  evidence has been presented that the at issue property was rented to a black

5  individual, based on Plaintiff's deposition testimony.  ECF No. 24-3 at 10 ("I

6  believe . . . the property was rented to an African American gentleman from

7  Kenya. I had spoken to him during my investigation and he basically said when he

8  rented the property . . .") .  In sum, Plaintiff offers no link between the statistics he

9  provides and the actions of the Defendants, and the facts of the case do not support

10  the inference he is attempting to draw.

11      Moreover, Plaintiff's claim that Defendants did not advertise their "first

12  come first serve," policy is nonsensical.  There are countless adages that

13  memorialize the sentiment that first in time is first in right, and it only makes

14  logical sense that it is both a fair and good business practice to admit the first

15  qualified individual.  Therefore, summary judgment is proper with respect to

16  Plaintiff's disparate impact claim.

17      **III.   Washington Law Against Discrimination**

18      Plaintiff does not defend his Washington Law Against Discrimination claims

19  in Response to the present motion, and given his silence and the above findings,

20  they too fail.  Both RCW 49.60.030(1)(c) and RCW 49.60.222 prohibit

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

1  discrimination in real estate transactions on the basis of race.  And RCW 49.60.220

2  prohibits the practice of aiding, abetting, or encouraging "the commission of any

3  unfair practice, or to attempt to obstruct or prevent any other person from

4  complying with" the Washington Law Against Discrimination.  As Washington

5  State also analyzes discrimination claims under the burden shifting framework of

6  *McDonnell Douglas*, summary judgment is proper as to Plaintiff's state law claims.

7  *Marquis v. City of Spokane*, 130 Wn.2d 97, 113 (1996).  The elements to prove a

8  prima facia disparate treatment case in Washington largely tract the federal

9  elements.  *See Haley v. Pierce Cnty. Washington*, 173 Wn. App. 1017 (2013) ( "To

10  prove a prima facie case of race discrimination under WLAD, a plaintiff must

11  show that (1) he is a member of a racial minority; (2) he applied for and was

12  qualified for an available job; (3) he was not offered the position; and (4) after his

13  rejection, the position remained open and the employer continued to seek

14  applicants from other persons with the plaintiff's qualifications."); *Smith v. Brown*,

15  C10-1021 MJP, 2010 WL 3120203, at *6 (W.D. Wash. Aug. 9, 2010) (Referencing

16  RCW 49.60.222, "(1) Plaintiffs have a sensory, mental, or physical impairment

17  that is medically cognizable or diagnosable, (2) Plaintiffs qualify for the housing,

18  (3) Defendants have notice of the impairment and its accompanying substantial

19  limitations, and (4) Defendants failed to affirmatively adopt measures that were

20  available and medically necessary to accommodate the impairment").  The same is

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 14

true of a prima facia case for disparate impact.  *See State v. City of Sunnyside*, 550 P.3d 31, 50 (Wash. 2024) (internal citation and quotation marks omitted) ("For a disparate impact claim under the WLAD, the plaintiff must prove (1) there is a facially neutral policy or practice and (2) the policy falls more harshly on a protected class.").

Plaintiff has provided no evidence that he did not receive the rental property on account of his race, he was simply not the first person to apply.  And likewise, has not provided a causal connection between a credit score requirement and a disparate impact in the ability of members of a protected class to rent property from Defendants.  And Plaintiff's claim arising from RCW 49.60.220 is inapplicable given the above findings.

**IV.    Tort Claims**

Plaintiff also leaves his claims of Intentional and Negligent Infliction of Emotional Distress, and Negligent Retention and Supervision undefended in Response.  To prove intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003).  Though the first element is typically left to a jury, a trial court may decide if reasonable minds could differ as to whether the conduct was sufficiently extreme to result in liability.  *Dicomes v.*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

1   *State*, 113 Wash.2d 612, 630 (1989).  In his Complaint, Plaintiff argues that

2   Defendants' manipulation of rental criteria in order to prevent him from qualifying

3   for the property constitutes intentional extreme and outrageous conduct.  *See* ECF

4   No. 1 at 35, ¶ 162–63.  However, as discussed above, Defendants provided

5   unrebutted evidence that they did not manipulate the posting after Plaintiff applied,

6   nor that Plaintiff was denied on account of his credit score.  The inability to rent a

7   property because another individual submitted an approved application first is not

8   outrageous conduct.  Moreover, Plaintiff does not articulate a clear framework for

9   his negligent infliction of emotional distress claim in his Complaint, but

10  Washington law has an objective physical manifestation of injury requirement, and

11  he has provided no evidence of physical injury.  *Colbert v. Moomba Sports, Inc.*,

12  163 Wn.2d 43, 50 (2008) (citing *Hegel v. McMahon*, 136 Wash.2d 122, 126

13  (1998)).

14      Washington law recognizes negligent retention in cases where a plaintiff has

15  shown that an employer knew of an employee's unfitness for their job, or failed to

16  exercise reasonable care when hiring or retaining the employee, and these claims

17  typically arise when the employee is acting outside of the scope of their

18  employment.  *Hicks v. Klickitat Cnty. Sheriff's Office*, 23 Wn. App. 2d 236, 248

19  (2022) (internal citations omitted).  And negligent supervision requires a showing

20  that "(1) an employee acted outside the scope of his or her employment; (2) the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 16

1  employee presented a risk of harm to other employees; (3) the employer knew, or

2  should have known in the exercise of reasonable care that the employee posed a

3  risk to others; and (4) that the employer's failure to supervise was the proximate

4  cause of injuries to other employees." *Briggs v. Nova Servs*., 135 Wn. App. 955,

5  966–67 (2006), aff'd, 166 Wn.2d 794 (2009) (citing *Niece v. Elmview Group*

6  *Home*, 131 Wash.2d 39, 48–49 (1997)).  Plaintiff's Complaint does not allege that

7  any employee was acting outside the scope of his or her duty.  Summary

8  judgement is therefore proper as to Plaintiff's tort claims.

9  **V.    Breach of Contract and Unfair Business Practices**

10      In Response to the present motion, Plaintiff includes causes of action for

11  Breach of Contract and Unfair Business Practices, and notes that while the claims

12  do not appear in his Complaint, he intends to seek amendment.  ECF No. 33 at 8–

13  10.  Raising new theories of liability in response to a motion for summary

14  judgment has been admonished by the Ninth Circuit, and thus these claims are

15  disregarded.  *Patel v. City of Long Beach*, 564 Fed. Appx. 881, 882 (9th Cir. 2014)

16  ("As the district court held, a plaintiff cannot raise a new theory for the first time in

17  opposition to summary judgment."); *Coleman v. Quaker Oats Co.,* 232 F.3d 1271,

18  1292–93 (9th Cir. 2000) ( "A complaint guides the parties' discovery putting the

19  defendant on notice of the evidence it needs to adduce in order to defend against

20  the plaintiff's allegations.").

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 17

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 22) is

    **GRANTED**.

2. Plaintiff's claims are **DISMISSED with prejudice**.

The District Court Executive is directed to enter this Order, furnish copies to

counsel, enter judgment in favor of Defendants, and **CLOSE** the file.  The

deadlines, hearings and trial date are **VACATED.**

DATED May 30, 2025.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18